UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EVAN SARGENT,

        Plaintiff,

v.

CITY OF SEATTLE, et al.,

        Defendants.

C12-1232 TSZ

ORDER

THIS MATTER comes before the Court on the Defendants' Motion for Protective Order, docket no. 13.  Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court enters the following Order.

**I.    Background**

Plaintiff Evan Sargent brings claims against the City of Seattle and Seattle Police Department ("SPD") Officer Donald Waters arising from his arrest and detention on July 28, 2009.  Complaint at 1, docket no. 1.  Sargent alleges unlawful arrest and use of excessive force in violation of state and federal law.  Id. at ¶¶ 2.9-2.13, 2.18-2.20, 3.4-3.18.  In addition, he alleges claims against the City of Seattle ("City") under Monell v. New York City Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978).  Id. at ¶¶ 2.22-2.23, 3.19-3.22.

ORDER - 1

1  Under <u>Monell</u>, Plaintiff may recover from the City if his injury was inflicted
2  pursuant to the municipality's policy, practice, or custom. <u>Id.</u> at 694-95. He may also
3  recover under <u>Monell</u> by proving "that an official with final policy-making authority
4  ratified a subordinate's unconstitutional decision or action and the basis for it." <u>Gillette
5  v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Sargent claims liability against the
6  City on both theories. He alleges that the SPD officers who arrested and detained him
7  acted in accordance with SPD's policies, practices, or customs, and that these policies,
8  practices, or customs resulted in his unlawful arrest and detention. Complaint at ¶¶ 3.10-
9  3.17. He further alleges that the City subsequently ratified the officers' actions when the
10 Chief of Police reviewed and approved the Office of Professional Accountability's
11 ("OPA") conclusion that Sargent's claim of misconduct against Officer Waters was "not
12 sustained." <u>Id.</u> at ¶¶ 3.19-3.22.

13 Sargent seeks to depose Seattle Police Chief John Diaz[1] and Mayor Mike
14 McGinn's legal counsel Carl Marquardt concerning SPD's policies, practices and
15 customs, and the City's alleged ratification of Waters' conduct. Response at 3-4, docket
16 no. 19. Defendants seek a protective order relieving Chief Diaz and Mr. Marquardt from
17 deposition in this matter. Motion for Protective Order at 2, docket no. 13.

---

[1] Chief Diaz tendered his resignation after this motion was filed. Mike Carter, Steve Miletich & Sara Jean Green, *Seattle Police Chief John Diaz: 'Time for me to go,'* SEATTLE TIMES, April 8, 2013, http://seattletimes.com/html/localnews/2020737963_diazretiresxml.html?prmid=4934.

ORDER - 2

## II. Discussion

Pursuant to Federal Rule of Civil Procedure ("FRCP") 26(b), a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to the limitations imposed by FRCP 26(b)(2)(C). A party from whom discovery is sought may move for a protective order and the court may issue such order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The party seeking the protective order must show "good cause," which has been characterized by the Ninth Circuit as a "showing that specific prejudice or harm will result if no protective order is granted." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003) (citations omitted). "A district court is vested with broad discretion to permit or deny discovery, and a decision 'to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant.'" Laub v. U.S. Dept. of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting Hallett v. Morgan, 287 F.3d 1193, 1212 (9th Cir. 2002)).

Defendants seek a protective order prohibiting Plaintiff from deposing Chief Diaz and Mr. Marquardt because (1) Chief Diaz is a high-ranking city official who should not be subjected to deposition absent compelling reasons,and (2) neither deponent has information relevant to any of the Plaintiff's claims.

### 1. Chief Diaz

As a general rule, high-ranking government officials are not subject to deposition absent extraordinary circumstances. U.S. v. Morgan, 313 U.S. 409, 61 S.Ct. 999 (1941);

ORDER - 3

Thomas v. Cate, 715 F.Supp.2d 1012, 1049 (E.D. Cal. 2010); In re United States of America, 985 F.2d 510, 512 (11th Cir. 1993); Kyle Engineering Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979); Coleman v. Schwarzenegger, 2008 WL 4300437, at *2 (E.D. Cal. 2008). Extraordinary circumstances are present where (1) the high-ranking official has "direct personal factual information pertaining to material issues in an action," and (2) "the information to be gained is not available through any other sources." Coleman, 2008 WL 4300437, at *2 (quoting Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007)). The rationale behind the rule is twofold. First, the rule aims to protect officials from discovery obligations that will burden the performance of their duties. In re United States of America, 985 F.2d at 512. Second, the rule is intended to protect officials from unwarranted inquiries into their decision-making process. Morgan, 313 U.S. at 422.

In the present case, the parties disagree whether Chief Diaz qualifies as a high-ranking official. Defendants argue that Chief Diaz is a high-ranking official who may not be deposed absent extraordinary circumstances. Plaintiff counters that Chief Diaz is not a high-ranking official as contemplated by the case law, and even if he does qualify as a high-ranking official, he is still properly subject to deposition because he has "direct personal factual information pertaining to material issues" in this action that is not available from other sources.

Defendants cite to several unpublished decisions where a court has concluded that a chief law enforcement officer is a high-ranking official to support their argument that the heightened standard applies to Chief Diaz. See, e.g., Jarbo v. Orange County, 2010 WL 3584440, at *2 (C.D. Cal. 2010) (concluding that the Sheriff of Orange County was a

ORDER - 4

1 high-ranking official not subject to deposition absent extraordinary circumstances);

2 Avalos v. Baca, 2006 WL 6220447, at *2 (C.D. Cal. 2006) (granting motion for

3 protective order protecting County Sheriff from deposition as high-ranking official);

4 Arizmendi v. City of San Jose, 2010 WL 1459867, at *2 (N.D. Cal. 2010) (granting

5 motion protecting Chief of Police from deposition); Slone v. Judd, 2011 WL 1584421, at

6 *2 (S.D. Fla. 2008) (granting protective order relieving County Sheriff from testifying at

7 trial). Plaintiff counters that there is no blanket protection for chief law enforcement

8 officers, citing to three unpublished cases.

9      The cases cited by Plaintiff do not establish that chief law enforcement officers are

10 not high-ranking officials. In Detoy v. City and County of San Francisco, the court stated

11 that it "doubted" that the plaintiff was required to meet the heightened standard

12 applicable to high-ranking officials in order to depose the San Francisco Chief of Police.

13 196 F.R.D. 362, 369-70 (N.D. Cal. 2000). However, the court went on to conclude that

14 the plaintiff nevertheless met the heightened standard by showing extraordinary

15 circumstances and compelling need. In Green v. Baca, the court cited Detoy for the

16 proposition that the high-ranking official rule might not apply to the Los Angeles County

17 Sheriff. However, in denying the Sheriff's motion for a protective order prohibiting

18 plaintiff from calling him as a witness at trial, the court explained that the Sheriff had

19 personal knowledge of the relevant facts. 226 F.R.D. 642, 649-50 (C.D. Cal. 2005). The

20 third case cited by Plaintiff is inapposite. In Alley-Barnes v. Sackman, this Court cited to

21 the deposition of former Seattle Chief of Police Kerlikowske in its order on summary

22 judgment. 2007 WL 2363050, at *3 (W.D. Wash. 2007). However, Chief Kerlikowske's

23

ORDER - 5

deposition was not at issue or discussed in that order. Id. The Court concludes that Chief Diaz is a high-ranking official who may not be deposed absent a showing of extraordinary circumstances.[2]

In order to depose a high-ranking government official, a plaintiff must show that the deponent has direct personal information of material issues in the action and that the information may not be gained from any other source. Cate, 715 F. Supp.2d at 1049; Coleman, 2008 WL 4300437, at *2. If the information sought is available from another source, the court will not compel the deposition of the high-ranking official. See Cate, 715 F. Supp.2d at 1049 (party seeking the deposition of an agency head or a high-ranking official must show the evidence sought is not available through less burdensome means or alternative sources).

Sargent primarily seeks information pertaining to Chief Diaz's involvement in the investigation of Officer Waters by OPA. He alleges that Chief Diaz received a carbon copy of his complaint letter to SPD accusing Officer Waters of misconduct and forwarded the letter to OPA, thereby personally initiating the investigation of Waters.

---

[2] Plaintiff suggests that the fact that Chief Diaz resigned after the City filed its motion for a protective order changes the analysis because appearing for deposition would no longer interfere with official duties of office. This argument is unpersuasive. Courts have extended the rule to cover depositions of former high-ranking officials. See Cate, 715 F.Supp.2d at 1049-50; U.S. v. Sensient Colors, Inc., 649 F.Supp.2d 309, 316-17 (D. N.J. 2009); U.S. v. WalMart Stores, 2002 WL 562301, at *2-4 (D. Md. 2002). As one court has explained, "[f]ormer high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation." Arnold Agency v. West Virginia Lottery Com'n, 206 W.Va. 583, 599, 526 S.E.2d 814 (W. Va. 1999). That interest survives leaving office. WalMart Stores, Inc., 2002 WL 562301, at *3 (applying Morgan to former high-ranking officials and noting that "[i]f the immunity Morgan affords is to have any meaning, the protections must continue upon the official's departure from public service.").

Response at 4 (citing Exs. E & F to Brennan Decl.).  Sargent seeks to question Chief Diaz about his decision to forward the letter to OPA, his instruction to OPA, and OPA's handling of the investigation.  Id.

In support of Defendants' motion for protective order, Chief Diaz submitted a declaration denying any first-hand knowledge of the incident involving Officer Waters and Sargent.  Diaz Decl., docket no. 15.  In addition, he stated that:

> To the best of my recollection, the Office of Professional Accountability review of this incident was not forwarded to me for approval or review. That is routine in cases that result in a "not sustained" finding.  Typically I only review cases that result in some form of sustained finding, where discipline has been or might be recommended.

Id. at ¶3.  Plaintiff argues that the Court should not rely on these statements because Chief Diaz previously submitted a declaration in a related Public Records Act case filed by Sargent in state court, in which he stated that the Chief of Police is "responsible for the management and oversight of all aspects of SPD including, the review of OPA-IS investigations and recommendations and the imposition of discipline, when necessary."  Diaz Decl. at ¶ 1, docket no. 15-1.  In addition, Chief Diaz's prior declaration stated that the OPA Director "oversees investigation of complaints, certifies investigative findings, and makes recommendations on disposition and discipline to my office."  Id. at ¶ 7.  Plaintiff argues that Chief Diaz's prior declaration is inconsistent with his statement that the OPA "review of this incident was not forwarded to me for approval or review."

The Court concludes that Sargent has failed to allege that Chief Diaz has "direct personal factual information" pertaining to the OPA investigation of Officer Waters.  Coleman, 2008 WL 4300437, at *2.  Sargent alleges that Chief Diaz "initiated" the OPA

ORDER - 7

investigation by forwarding Sargent's complaint letter to OPA. But other than forwarding Sargent's complaint letter to OPA, Sargent points to no facts supporting his claim that Chief Diaz was personally involved in the OPA investigation. Rather, Chief Diaz has submitted a declaration stating that he did not "influence, correct, alter, or in any way change the course" of the OPA investigation into Mr. Sargent's case. Diaz Decl. at ¶ 5, docket no. 15. In addition, he states that he did not "review" or "approve" the "not sustained" finding. Id. at ¶¶ 3, 5.

In addition, the Court concludes that Chief Diaz's statement that he did not review the OPA recommendation in this case is not inconsistent with his prior declaration in the related state Public Records Act case. The fact that the Chief of Police is "responsible for the management and oversight of all aspects of SPD including, the review of OPA investigations and recommendations and the imposition of discipline, when necessary," Diaz Decl. at ¶ 1, docket no. 15-1, does not mean that the Chief of Police reads and reviews every OPA investigative report. In this case, Chief Diaz has stated that he did not personally review or approve the OPA recommendation.

Moreover, even if Chief Diaz had some personal information concerning the OPA investigation, the next inquiry the Court must make is whether this information may be gained from any other source. The City argues that the information Plaintiff seeks about the OPA investigation is available through the deposition of Kathryn Olson, the Director of OPA. Reply at 3. The Court agrees. Plaintiff may question OPA Director Olson about the manner in which OPA investigated Officer Waters, how the investigation was

ORDER - 8

initiated, and what, if any, involvement Chief Diaz had in the investigation and disposition of Sargent's complaint.

To the extent that Plaintiff seeks to depose Chief Diaz about SPD's policy of detaining any person arrested or detained for assaulting an on-duty or off-duty police officer until the incident is reviewed by a "sworn supervisor of lieutenant or above," see Complaint at ¶¶ 2.14-2.15, or any other SPD policy or procedure at issue in this action, Plaintiff may note a Rule 30(b)(6) deposition on this issue.  Sargent has not demonstrated that Chief Diaz has any information about this policy that could not be obtained from another witness designated by the City.

In sum, Plaintiff speculates that Chief Diaz may have been involved in the OPA's investigation of Officer Waters beyond forwarding his complaint letter to OPA.  But Plaintiff can point to no facts supporting this hypothesis and Chief Diaz has submitted a declaration denying involvement in the OPA investigation and denying that he reviewed OPA's ultimate recommendation.  The Court concludes that Sargent has failed to allege that Chief Diaz has "direct personal factual information" pertaining to the OPA investigation of Officer Waters or SPD's policies, practices and customs that cannot be obtained from another source.  Coleman, 2008 WL 4300437, at *2.

**2. Mr. Marquardt**

Mr. Marquardt is Legal Counsel to the Mayor and serves as the primary liaison to the City Attorney's Office.  Marquardt Decl. at ¶ 2, docket no. 14.  Marquardt apparently became aware of the Sargent matter sometime after Sargent filed suit against the City in August 2010.  Id. at ¶ 3.  Since the litigation commenced, Mr. Marquardt has participated

in internal discussions with other City employees regarding the lawsuit, Mr. Sargent's claims, and the City's defense.  Id.

After the Seattle Time published an article quoting Sargent's attorney, Mike McKay, stating that SPD had engaged in a "full-blown cover-up and a clear violation of state public-records laws," and that Chief Diaz had "grossly mischaracterized" facts in order to "justify SPD's decision to withhold public records," in January 2011, see Mike Carter, *Former U.S. attorneys join call for federal civil-rights probe of Seattle police*, SEATTLE TIMES, January 13, 2013, http://seattletimes.com/html/localnews/2013931948_mckayletter14m.html, Mr. Marquardt contacted the law offices of McKay Chadwell by e-mail to inquire as to the basis for those statements.  Id. at ¶ 4.  Mr. Marquardt has submitted a declaration stating that the communication with McKay Chadwell following the Seattle Times article, and a related inquiry by the Seattle Weekly, are the only contacts he has had with anyone outside of the City regarding the Sargent matter.  Id.

Plaintiff contends that his proposed deposition of Mr. Marquardt is relevant to his Monell claims against the City.  He contends that Marquardt's testimony is reasonably calculated to lead to the discovery of admissible evidence because "Marquardt was deeply involved with the City's response to Sargent's claims of constitutional violations." Response at 10; Brennan e-mail, docket no. 16-1.  But Mr. Marquardt is not an elected official and has no policy making authority for the City.  Marquardt Decl. at ¶ 2. Moreover, he had no role in the investigation of Mr. Sargent or Mr. Waters, and has no authority to ratify, approve, or adopt the actions of Officer Waters for the City.  Id. at ¶ 6.

As such, the Court agrees that the deposition of Mr. Marquardt is not reasonably calculated to lead to admissible evidence with respect to Sargent's <u>Monell</u> claims.

To the extent that Plaintiff seeks information about SPD's policies, practices, or customs, Mr. Marquardt is not the appropriate individual to provide this information. He is a legal advisor to the Mayor and is not employed by SPD. Plaintiff may note a Rule 30(b)(6) deposition and allow the City to designate the appropriate individual to speak on this issue.

### III. <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS the Defendants' motion for a protective order relieving Chief Diaz and Mr. Marquardt from deposition in this matter.

Dated this 7th day of May, 2013.

*[signature]*

THOMAS S. ZILLY
United States District Judge